STATE of Wisconsin, Plaintiff-Respondent,

v.

Gerald J. VAN CAMP, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 96–0600–CR, 96–1509–CR. Oral argument September 9, 1997.—Decided October 23, 1997.*

(Also reported in 569 N.W.2d 577.)

For the defendant-appellant-petitioner there were briefs by *Robert R. Henak* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee and oral argument by *Robert R. Henak*.

For the plaintiff-respondent the cause was argued by *Maureen McGlynn Flanagan*, assistant attorney general, with whom on the brief was *James E. Doyle*, assistant attorney general.

¶ 1. DONALD W. STEINMETZ, J.   The issues in this case are: (1) whether the State established by clear and convincing evidence that the defendant's no contest plea was voluntarily, knowingly, and intelligently entered; and (2) whether the circuit court's prediction as to the probable outcome upon trial and its concern for the victim's feelings are relevant considerations in determining whether withdrawal of a no contest plea is required under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

¶ 2. This is a review of an unpublished decision of the court of appeals, *State v. Van Camp*, Nos. 96–0600-CR & 96–1509-CR, unpublished op. (Wis. Ct. App. Dec. 3, 1996) which affirmed the Circuit Court for Eau Claire County, Eric J. Wahl, Judge, denying Van Camp's motion for postconviction relief under Wis. Stat. § 974.06 (1995–96).[1] We reverse and remand the case to the trial court with the direction that Van Camp be permitted to withdraw his plea of no contest.

¶ 3. On September 7, 1994, the State filed a criminal complaint charging one count of kidnapping as party to a crime against Gerald Van Camp, a man 62 years old, with a fourth-grade education, an IQ of 84, and no prior arrests. The charge was based upon the claim that Van Camp and a friend drove to the Eau Claire home of Ronald Geurts and forced him to accompany them in Van Camp's automobile for

---

[1] All future references to Wis. Stats. will be to the 1995–96 version of the statutes unless otherwise indicated.

approximately three hours of abuse, all under the mistaken belief that Geurts was seeing Van Camp's ex-girlfriend.

¶ 4.   The State filed an information reflecting this charge and subsequently amended it adding one count of false imprisonment in violation of Wis. Stats. § 940.30.[2] Van Camp initially pled not guilty to both charges, and the matter was set for a two-day trial to commence on April 18, 1995.

¶ 5.   On the first day of trial, the State presented its entire case. After the jury left for the day, the prosecutor presented to Van Camp's defense counsel, Attorney Owen R. Williams, an offer for a plea agreement. Attorney Williams agreed to recommend the State's offer to his client.

¶ 6.   The next morning counsel for both parties informed the court that they had reached an agreement. Attorney Williams explained to the court that Van Camp had agreed to enter a plea of no contest to the false imprisonment count and that the State agreed to dismiss the kidnapping count. Both parties agreed that the kidnapping charge would be read in for purposes of sentencing.

¶ 7.   After a brief colloquy, during which the court determined that Van Camp in fact said he would plead no contest to false imprisonment, that no threats or promises were made, and that he understood that the court could impose "the maximum sentence," the court accepted Van Camp's plea. After the prosecutor noted "some. . .reticence" on the part of Van Camp, the court

---

[2] Wis. Stats. § 940.30 provides as follows: "Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony."

also discussed the necessary elements and factual basis for the plea.

¶ 8. The court withheld sentence and placed Van Camp on probation for a period of three years, with the condition that he serve nine months jail time with Huber privileges for work and counseling.

¶ 9. By timely motion, Van Camp sought to withdraw his no contest plea on the grounds of manifest injustice and as a matter of right on the grounds that the plea was not freely, voluntarily and knowingly entered. He also sought to withdraw that plea as the result of ineffective assistance of trial counsel.[3] Following an evidentiary hearing, the circuit court denied the motion.

¶ 10. At the postconviction hearing, the prosecutor conceded that the plea colloquy was inadequate, and that Van Camp had made a prima facie case under *State v. Bangert*. The State then called defendant's counsel, Attorney Williams, to testify in an attempt to show that Van Camp voluntarily, knowingly, and intelligently entered his plea.

¶ 11. Attorney Williams testified that Van Camp initially declined the State's offer, but that he eventually was able to overcome his client's reluctance to plead. Attorney Williams testified that he did not recall discussing Van Camp's constitutional rights with Van

[3] The court of appeals held that the defendant waived the ineffective assistance of counsel claim. The court found that a no contest plea constitutes a waiver of non-jurisdictional defects and defenses, including claims of constitutional rights violations, and that the defendant failed to make a proper record to preserve this claim. The defendant did not raise in his petition for review the issue of ineffective assistance of counsel. This issue, therefore, is not considered in this opinion. *See* Wis. Stat. § (Rule) 809.62(6).

Camp at the time of the plea, nor did he go through a guilty plea questionnaire and waiver of rights form with Van Camp. He claimed, however, to have gone through a litany of rights with Van Camp when they first met some seven months prior to the plea.

¶ 12. The court stated in conclusory terms its belief that "Mr. Van Camp entered his plea knowingly and voluntarily" and that "the *Bangert* test was met." The court explained that this did not constitute a finding that Van Camp knew any particular fact or right, but rather, that he generally knew what he was doing. The trial judge stated, "That does not mean that he necessarily understood every nuance of what this all meant or that what exactly a read-in could do or how that would reflect, but overall, he entered it knowingly and voluntarily."

¶ 13. The question of whether a defendant may withdraw a plea is ordinarily for the discretion of the trial court. *See State v. Rock*, 92 Wis. 2d 554, 559, 285 N.W.2d 739 (1979). We will not disturb the trial court's decision unless it has erroneously exercised its discretion. *See id.* When a defendant establishes a denial of a relevant constitutional right, however, withdrawal of the plea is a matter of right. *See Bangert*, 131 Wis. 2d at 283; *State v. Bartelt*, 112 Wis. 2d 467, 480, 334 N.W.2d 91 (1983). The trial court reviewing the motion to withdraw in such instance has no discretion in the matter. *See Bangert*, 131 Wis. 2d at 283 (citing *Rock*, 92 Wis. 2d at 559).

¶ 14. A plea of no contest that is not voluntarily, knowingly, and intelligently entered violates fundamental due process. *See Bangert*, 131 Wis. 2d at 257 (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). A

plea may be involuntary either because the defendant does not have a complete understanding of the charge or because he or she does not understand the nature of the constitutional rights he or she is waiving. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

¶ 15. On appellate review, the issue of whether Van Camp's plea was voluntarily, knowingly, and intelligently entered is a question of constitutional fact. *See Bangert*, 131 Wis. 2d at 283; (citing *Miller v. Fenton*, 474 U.S. 104 (1985)(holding that voluntariness of a confession is not an issue of fact, but is a legal question requiring independent factual determination)). We review constitutional questions independent of the conclusion of the lower courts. *See id.* at 283; *see also State v. Kywanda F.*, 200 Wis. 2d 26, 42, 546 N.W.2d 440 (1996). We will not upset the circuit court's findings of evidentiary or historical facts unless they are clearly erroneous. *See State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987); *see also* Wis. Stat. § (Rule) 805.17(2).

¶ 16. Applying this standard to the case at bar, and upon review of the entire record, we conclude that Van Camp did not enter his plea voluntarily, knowingly, and intelligently.

¶ 17. Under the procedure this court established in *Bangert*, we employ a two-step process to determine whether a defendant voluntarily, knowingly, and intelligently entered a plea of no contest. We must first determine (1) whether the defendant has made a prima facie showing that his plea was accepted without the trial court's conformance with Wis. Stat. § 971.08,[4] and

---

[4] Wis. Stat. § 971.08 provides, in pertinent part:

other mandatory duties imposed by this court, and (2) whether he has properly alleged that he in fact did not know or understand the information which should have been provided at the plea hearing. *See Bangert*, 131 Wis. 2d at 274. If the defendant meets this initial burden, the burden then shifts to the State, and we must determine whether the State has demonstrated by clear and convincing evidence that the defendant's plea was voluntarily, knowingly, and intelligently entered at the time the court accepts the plea, despite the inadequacy of the record. *See id.*

¶ 18.   To meet his initial burden under *Bangert*, the defendant must satisfy two threshold requirements. First, he must make a prima facie showing that his plea was accepted without the trial court's conformance with Wis. Stat. § 971.08, or other mandatory duties imposed by this court. *See Bangert*, 131 Wis. 2d at 274. Second, the defendant must properly allege that he in fact did not know or understand the information which should have been provided at the plea hearing. *See id.* Van Camp met this burden.

¶ 19.   Both the State and the defendant agree that the plea colloquy was woefully inadequate. The plea hearing transcript does not demonstrate a per-

(1)   Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a)   Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b)   Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c)   Address the defendant personally and advise the defendant as follows: 'If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law.'

sonal, voluntary waiver of Van Camp's constitutional rights, and it fails to show he knew or understood the potential punishment he faced by entering his plea.

¶ 20.   The trial court failed to conform with the mandatory duties imposed by this court. In *Bangert* we explained that "[a] person must know and understand that constitutional rights are waived by the plea in order for the plea to be voluntarily and intelligently made." *Id.* at 270 (citing *Edwards v. State*, 51 Wis. 2d 231, 234, 186 N.W.2d 193 (1971)). Invoking our supervisory powers, we there held that when accepting a plea of no contest, a trial court is required to inform the defendant of his rights and to ascertain that the defendant understands he is waiving those rights.[5] *See id.* at 271.

¶ 21.   Nothing in the plea hearing transcript establishes that the trial court fulfilled this express obligation. The court did not mention defendant's constitutional rights during the plea colloquy. Nor did the court ask the defendant whether he understood he was waiving his rights by entering his plea. The record

---

[5] In *Bangert*, we required that at plea hearings state courts must follow the provisions set forth in Wis. JI—Criminal SM–32, Part V, Waiver of Constitutional Rights, or specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving. We there stated that: "[t]he express duty to inform the defendant of the constitutional rights which he will be waiving, or to ascertain that the defendant possesses such knowledge, may be considered a seventh duty to be followed by the trial courts." *State v. Bangert*, 131 Wis. 2d 246, 270–72, 389 N.W.2d 12 (1986) (citing *Ernst v. State*, 43 Wis. 2d 661, 674, 170 N.W.2d 713 (1969)).

shows that the court failed to follow the provisions set forth in Wis. JI—Criminal SM—32, Part V, Waiver of Constitutional Rights, and that the judge failed to ask defense counsel whether he informed defendant of his constitutional rights.

¶ 22.  We also note that the court failed to abide by Wis. Stat. § 971.08. In pertinent part, Wis. Stat. § 971.08 provides that before a court accepts a plea of no contest, it shall "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge *and the potential punishment if convicted.*" Wis. Stat. § 971.08(1)(a) (emphasis added).

¶ 23.  Nothing in the plea hearing transcript establishes that Van Camp understood the range of punishments he faced. The court did not provide such information in the plea colloquy or ask Van Camp's defense counsel whether he had explained it to the defendant. Nor did the court refer to any part of the record or any other evidence showing defendant's knowledge of this information. At the time of entry of his plea, Van Camp was entitled to know what could happen to him, including the maximum sentence he faced by pleading no contest. *See Bartelt*, 112 Wis. 2d at 475; *see also State v. Mohr*, 201 Wis. 2d 693, 700, 549 N.W.2d 497 (Ct. App. 1996). By accepting Van Camp's plea without informing him of the potential punishment he faced, the court failed to conform with the requirements of Wis. Stat. § 971.08.

¶ 24.  Having established that the trial court failed to inform him of the constitutional rights he would waive and of potential punishment he faced by entering his plea, the defendant made a prima facie showing that the court accepted the plea without con-

143

forming with the requirements of Wis. Stat. § 971.08 and other mandatory duties imposed by this court.

¶ 25. After reviewing the record, we believe the State waived the issue of whether defendant sufficiently alleged that he in fact did not know or understand the information which should have been provided at the plea hearing. Although it appears that the defendant never expressly alleged that he did not know or understand this information, the State conceded during the postconviction hearing that the defendant had made a prima facie showing under *Bangert* and that the burden had shifted to the State to show that the defendant had entered his plea knowingly, voluntarily, and intelligently. The State failed to challenge the sufficiency of defendant's allegations before the trial court or in the briefs submitted to the court of appeals.

¶ 26. This contention, advanced for the first time in briefs before this court, was waived by the State, and we decline to consider it. As a general rule, this court will not address issues for the first time on appeal. *See Perkins v. Peacock*, 263 Wis. 644, 650, 58 N.W.2d 536 (1953); *see also State v. Brown*, 96 Wis. 2d 258, 291 N.W.2d 538, 541 (1980). The reason for this general rule is to give trial courts the opportunity to correct errors, thus avoiding appeals. *See Herkert v. Stauber*, 106 Wis. 2d 545, 560, 317 N.W.2d 834 (1982). Had the State raised this issue below, the defendant would have had an opportunity to cure, and the trial court would have had the opportunity to consider, this claimed defect. We are unpersuaded that justice would be served here by entertaining the State's arguments where the trial court was not afforded an opportunity to do so. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–4, 287

144

N.W.2d 140, 145–46 (1980); *Binder v. Madison*, 72 Wis. 2d 613, 618, 241 N.W.2d 613 (1976).

¶ 27.　Based on the foregoing, we conclude that the defendant met his initial burden under *Bangert*. This does not entitle Van Camp to withdraw his plea as a matter of right. *See Bangert*, 131 Wis. 2d at 282. A postconviction review of all relevant evidence may reflect that the plea was constitutionally sound. The burden, however, shifts to the State to show by clear and convincing evidence that Van Camp entered his plea voluntarily, knowingly, and intelligently, despite the inadequacy of the record at the time of the plea hearing. *See id.* at 274.

¶ 28.　Once the burden shifts, the State must show that the defendant in fact possessed the constitutionally required understanding and knowledge which the inadequate plea colloquy failed to afford him. *See Bangert*, 131 Wis. 2d at 275. Whether a plea is voluntary depends in part on whether the defendant both knows and understands the nature of the constitutional protections he is waiving. *See Boykin*, 395 U.S. at 242; *see also Bangert*, 131 Wis. 2d at 259. The State, therefore, must show that Van Camp possessed both the knowledge and the understanding of the relevant constitutional rights he was waiving by entering his plea of no contest. We find that the State failed to make such a showing.

¶ 29.　To meet its burden, the State may utilize any evidence which substantiates that the plea was knowingly and voluntarily made. The State may examine the defendant or defendant's counsel and may rely on the entire record to demonstrate that Van Camp knew and understood the constitutional rights

145

he would be waiving. *See Bangert*, 131 Wis. 2d at 274–75.

¶ 30.  At the postconviction hearing, the State chose to call just one witness, Van Camp's defense counsel, Attorney Williams. Attorney Williams testified that he discussed the plea agreement with Van Camp on the evening after the first day of trial and on the morning before the second day of trial. Importantly, Attorney Williams also testified that he did not recall discussing Van Camp's constitutional rights at that time or going through a guilty plea questionnaire and waiver of rights form with him:

> Q.  All right. Now, from whatever point [Van Camp] indicated a willingness to resolve the case by a plea, from that point forward did you have a chance to discuss with him in any way, shape or form any of the statutory or constitutional rights such a plea would require him to give up?
>
> A.  I do not have specific memory of that. It's my practice to go over that and say now look, keep in mind that these are the rights you're waiving. I don't have specific memory of doing that.
>
> Q.  So is it possible that you, in fact, did not do that with Mr. Van Camp?
>
> A.  It is possible.

¶ 31.  Based upon his "invariable" practice, Attorney Williams claimed that at some time during representation he had gone through the "litany of rights" with Van Camp. According to Attorney Williams's testimony, this most likely occurred when he first met with Van Camp on September 10, 1994, some seven months prior to the plea hearing.

146

¶ 32. Attorney Williams's testimony does not establish that Van Camp, at the time he entered his plea, knew or understood that he was waiving certain constitutional rights. A plea involves a simultaneous waiver of a variety of constitutional rights, including the right against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *See Boykin*, 395 U.S. at 243; *see also Edwards*, 51 Wis. 2d at 235. Although a defendant need not specifically waive each right, the record or other evidence must show that he understood the rights he was waiving. *See Edwards*, 51 Wis. 2d at 235–36; *Bangert*, 131 Wis. 2d at 270.

¶ 33. The record now before us is silent as to whether Van Camp understood that he was waiving his rights by entering his plea. At the plea hearing, the court did not inquire from Van Camp whether he understood the rights he was waiving. Attorney Williams was not asked, nor did he state, whether he had advised Van Camp that he was waiving any rights. Van Camp never completed a plea questionnaire or a waiver of rights form. As we explained in *Bangert*, understanding must have knowledge as its antecedent, and knowledge, like understanding, cannot be inferred or assumed on a silent record. *See Bangert*, 131 Wis. 2d at 269 (citing *Boykin*, 395 U.S. at 242, 243). We refuse to infer from this record that Van Camp made "an intentional relinquishment or abandonment" of his rights, as due process requires. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

¶ 34. The State argues that the fact that Attorney Williams read to Van Camp a litany of rights at their first meeting is sufficient to show that Van Camp

147

both knew and understood the constitutional rights he was waiving at the plea hearing. We find this argument unpersuasive.

¶ 35. First, the constitutional inquiry whether a plea was entered voluntarily, knowingly, and intelligently should not focus solely on a "ritualistic litany" of rights. *See Henderson*, 426 U.S. at 644. To accept Attorney Williams's litany of rights as sufficient, we would have to elevate procedural form over constitutional substance. This we will not do.

¶ 36. From our review of the record, we cannot determine whether this litany of rights was a complete list of Van Camp's rights, whether Attorney Williams explained each right to Van Camp, or whether Van Camp understood each right read to him. The record is limited to the testimony of Attorney Williams:

> Q. [Attorney Williams,] could you please relate to the Court what you include in that litany?
>
> A. Sure. [Defendants] have a presumption of innocence. They have the right to remain silent throughout the entire prosecution. They have a right to have an attorney represent them. If they cannot afford one, they have a right to presumption of innocence. Trial by jury of twelve. Right to unanimous verdict of that. Right to have their guilt proved beyond a reasonable doubt. Right to compel the attendance of witnesses by writ of subpoena. That's—unanimous verdict, twelve, oh, they have the right to have their guilt proved beyond a reasonable doubt and, in fact, there is a presumption of innocence that must be overcome by proof beyond a reasonable doubt.

We agree with the defendant that this part of Williams's "mental checklist" is at best "a conclusory, incomplete, and confusing muddle which even those

educated in the law would have a difficult time following." It is not enough merely to inform the defendant or point to a portion of the transcript or other evidence which indicates that the defendant possesses some knowledge of his rights; the court must also ascertain the defendant's understanding of those rights. *See Bangert*, 131 Wis. 2d at 269. We refuse to infer from Attorney Williams's testimony that Van Camp both knew and understood the rights he was waiving by entering his plea.

¶ 37.    Second, although the reviewing court may look to the record as a whole to show that the defendant understood the waiver of his constitutional rights, the defendant's understanding must be measured at the time the plea is entered. *See Bangert*, 131 Wis. 2d at 283 (citing *Edwards*, 51 Wis. 2d at 235–36). As we stated in *Bartelt*, the fact that a defendant was told sometime earlier of his rights is not necessarily determinative of whether he understood those rights at a later time. *Bartelt*, 112 Wis. 2d at 474 n.2. Accordingly, the fact that Attorney Williams read to Van Camp a litany of rights some seven months before the plea hearing does not show that at the plea hearing Van Camp understood or even remembered the rights he was waiving. The operative time for determining whether a defendant understands the effects of a plea remains the plea hearing itself. *See Bangert*, 131 Wis. 2d at 269.

¶ 38.    We do recognize that, when based on an adequate record, a defendant's past knowledge can support a voluntary and knowing plea. A court, however, must consider the totality of the circumstances when making such a determination. *See Henderson*,

149

426 U.S. at 645; *see also Brady v. United States*, 397 U.S. 742, 749 (1970) (concluding voluntariness of defendant's plea can be determined only by considering all of the relevant circumstances surrounding it).

¶ 39.  In *Parke v. Raley*, 506 U.S. 20 (1992), the United States Supreme Court found that a court may reasonably infer from the fact that a defendant was fully informed of his rights at one point that he was still aware of them nearly two years later. *Id.* at 37. We agree with the Court's rationale in *Parke*, but we do not believe that such an inference is supported by the record before us.

¶ 40.  In *Parke*, a defendant charged as a persistent felony offender challenged the validity of two previous guilty pleas. The Court found that the defendant's knowledge of his rights in November 1979 permitted an inference that he remained aware of them 23 months later. *Id.* In its decision, the Court relied heavily on the government's evidence which showed that in the 1979 plea proceeding the defendant completed a "Plea of Guilty" form stating that he understood the charges against him, the maximum punishment he faced, his constitutional rights, and that a guilty plea waived those rights. *Id.* at 24. In addition, the Court noted that the defendant's counsel had verified his own signature on another part of the form indicating that he had fully explained defendant's rights to him. *Id.* The court added that the defendant's testimony indicated that his sophistication regarding his legal rights had increased substantially after his first conviction. *Id.* at 25.

¶ 41.  The current record diverges significantly from that relied on in *Parke*. At the time of the plea, Van Camp was a man 62 years of age, with a fourth-grade education and an IQ of 84. Van Camp had never

before been in trouble with the law and had never completed a plea questionnaire or a waiver of rights form. Unlike the defendant in *Parke*, Van Camp exhibited an unreliable memory and little sophistication regarding his legal rights. As Attorney Williams testified at the July 21, 1995, sentencing hearing:

> I have seen what I believe to be a difficulty of Mr. Van Camp to understand certain concepts during the course of the representation. . .I've seen a deterioration of his memory which I don't believe to be selective or brought on. . .I think he and I discussed things and then I form certain opinions based on facts which he gives me, then these facts are not remembered by him at a later time. . .It may be the stress of the litigation which has caused this but quite frankly I think that the guy is slipping mentally . . .

¶ 42.   We agree that when supported by a sufficient record, a court may reasonably infer that a defendant is aware of his rights from the fact that he was fully informed at some previous time. We do not believe, however, that the current record supports such an inference.

¶ 43.   Based on the foregoing, we find that the State failed to carry its burden under *Bangert* to establish by clear and convincing evidence that Van Camp knew and understood the constitutional rights he waived by entering his plea. *See Bangert*, 131 Wis. 2d at 274. We therefore conclude that Van Camp did not enter his plea voluntarily, knowingly, and intelligently. The decision of the court of appeals is reversed and remanded to the trial court with the direction that the court allow Van Camp to withdraw his plea of no contest as a matter of right.

¶ 44.    Since this conclusion disposes of the appeal now before us, we find it unnecessary to determine whether the record establishes that Van Camp had sufficient knowledge of the potential punishment he faced by entering his plea. Nor do we find it necessary at this time to determine whether the information provided to Van Camp regarding the effect of having the kidnapping charge read in was necessary or sufficient for his plea to be constitutionally valid.

¶ 45.    To clarify the standard we established in *Bangert*, we do find it necessary to discuss the trial court's consideration of both the likely outcome of the case and the victim's feelings when determining whether Van Camp entered his plea voluntarily, knowingly, and intelligently. Neither factor is relevant to the analysis set out in *Bangert* or to the constitutional validity of a defendant's plea.

¶ 46.    The circuit court made clear from the beginning of the postconviction hearing that its belief that Van Camp had no viable defense to the false imprisonment charge was a major factor in denying Van Camp's motion to withdraw his plea. The court stated: "I believe before a withdrawal is a reasonable possibility, before withdrawal should be reasonably granted, rather there should be some indication that the ultimate outcome of the case will be affected."[6]

---

[6] At the conclusion of the postconviction hearing, the trial judge, denying Van Camp's motion to withdraw his plea, also stated:

> And as I indicated, I don't know if a jury would have convicted Mr. Van Camp of kidnapping. . . .But I believe the evidence on the false imprisonment was overwhelming and that these technical objections are just delaying the ultimate disposition of the case.
>
> And for those reasons I'm going to deny the motions. And let the matters proceed as they should.

¶ 47.   We find inappropriate the extent of the trial court's reliance on the likely outcome of the case. It is not proper for a trial judge to weigh the convincing power of facts and evidence to be entered as sufficient to deny a motion to vacate the plea of guilty or no contest. The perceived lack of a defense at trial is irrelevant to the question of whether a defendant must be permitted to withdraw a plea under *Bangert*. Rather, the sole focus in such motion is on whether the plea was voluntarily, knowingly, and intelligently entered. *See Bangert*, 131 Wis. 2d at 257. If not so entered, the defendant is absolutely entitled to withdraw the plea and go to trial:

> A defendant must ordinarily show a manifest injustice in order to be entitled to withdraw a guilty or no contest plea. . . .When a defendant establishes a denial of a relevant constitutional right, withdrawal of the plea is a matter of right. The trial court reviewing the motion to withdraw has no discretion in the matter in such an instance.

*Id.* at 283.

¶ 48.   Where, as here, the defendant has established a denial of his constitutional rights, the trial court should not consider whether the outcome of a case will likely change. Such consideration is neither a necessary nor sufficient factor to be considered in a motion to withdraw a plea. The potential outcome of evidence does not display the defendant's understanding or knowledge of his rights or the charges against him. In *State v. Reppin*, 35 Wis. 2d 377, 151 N.W.2d 9 (1967), we made it clear that the probable outcome at trial is unrelated to the question whether a defendant should be allowed to withdraw his or her guilty plea:

153

"The test at this stage is not whether the defendant is guilty but whether he was fairly convicted." *Id.* at 386.

¶ 49.    For similar reasons we also find inappropriate the circuit court's consideration of the victim's feelings in determining whether to allow Van Camp to withdraw his plea. In denying Van Camp's motion to withdraw his plea, the circuit court relied, in part, on its belief that to allow withdrawal would further punish the victim, Mr. Geurts.[7] As explained above, the circuit court's sole focus should have been on whether Van Camp's plea was voluntarily, knowingly, and intelligently entered. *See Bangert*, 131 Wis. 2d at 257. The victim's situation, no matter how tragic, is irrelevant in determining whether a plea was constitutionally valid. Considering Mr. Geurts's feelings was an error of law.

¶ 50.    Under the proper legal standard established in *Bangert*, the circuit court had no discretion but to allow Van Camp to withdraw his plea as a matter of right. The circuit court's focus on the eventual outcome of a trial, and its desire to avoid delay in imposing penalties, have led to increased costs, additional delays, and a needless use of judicial resources. By importing improper considerations into the analysis

---

[7] Denying Van Camp's motion to withdraw his plea, the circuit judge stated:

> We've been delaying these penalties now well into what should be the second year . . . Mr. Geurts has been punished by all these delays. . .I do think that at some point the rights of others have to be looked at in the process of making legal decisions. And I do think that Mr. Geurts's rights have not been fully taken care of in this matter because the man who tormented him, who terrorized him for a period of several hours. . .is still looking for more justice.

mandated by this court in *Bangert*, the circuit court committed an error of law and erroneously exercised its discretion.

¶ 51.   The case is remanded to the trial court with the direction to grant Van Camp's motion to withdraw his plea.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.